UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN JAY MAST,<br><br>Defendant. | 4:17-CR-40078-01-KES<br><br><br>ORDER DENYING MOTION FOR STAY AND GRANTING MOTION FOR BENCH TRIAL |

Defendant, Kevin Jay Mast, moves the court for an order staying the proceeding until Mast has exhausted his rights under the recent December 23, 2019 directive issued by the Department of Interior. Docket 90. The government opposes the motion. Docket 95. The government also moves the court for a bench trial. Docket 93. Mast opposes the motion. Docket 96. For the following reasons, the court denies Mast's motion to stay and grants the government's motion for a bench trial.

## DISCUSSION

On September 6, 2017, Mast was charged with "disturbing protected wetlands of the United States" in violation of 16 U.S.C. §§ 668dd(c) and (f)(1). Docket 2. On January 18, 2018, a jury found Mast guilty of the lesser-included offense in violation of 16 U.S.C. § 668dd(c)and (f)(2). Docket 45. Mast filed a timely appeal to the United States Court of Appeals for the Eighth Circuit on April 20, 2018. Docket 59. On September 16, 2019, the Eighth Circuit vacated Mast's conviction and remanded the case for further proceedings. Docket 83. A

trial is scheduled to begin on February 4, 2020. Docket 88. A superseding information was filed on January 10, 2020, charging Mast only with the lesser offense of 16 U.S.C. §§ 668dd(c) and (f)(2). Docket 94.

A.   **Motion to Stay the Proceedings**

First, Mast moves the court for an ordering staying the proceeding until Mast has exhausted his administrative appeal rights. Docket 90. On December 23, 2019, the United States Department of the Interior issued a directive developing new procedures for notifying landowners with pre-1976 wetland easements. *See* Docket 92 at 3. Effective immediately, the Department will map pre-1976 wetland easements and mail them to landowners in a new format. *Id.* The mailing will include a copy of a new mapping determination of the land. *Id.* Landowners will have the opportunity to appeal the new mapping determination by contacting the United States Fish and Wildlife Service (USFWS) and engaging in an appeal process should they disagree with the map. *Id.* If the appeal is not granted, the decision of the USFWS will be considered the final agency action and the landowner's administrative appeals will be deemed exhausted. *Id.* at 5. Mast's property was purchased in 1973 and is considered a pre-1976 easement. *See id.* at 6. Thus, if a new wetland map is issued to Mast, Mast could avail himself of the new USFWS procedures.

A stay of judicial proceedings is an extraordinary remedy for "[a] stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result[.]" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal

2

quotation and citation omitted). The decision of whether to issue a stay is generally a matter within a district court's discretion. *See Rhines v. Weber*, 544 U.S. 269, 276 (2005). The party requesting a stay bears the burden of showing that it is warranted. *Nken*, 556 U.S. at 433-34. Courts typically consider and balance factors, including whether the individual will be irreparably injured absent a stay, whether the issuance of a stay will injure or prejudice the other party, whether the individual has made a strong showing that he or she is likely to succeed on the merits, and where the public interest lies. *See Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011).

First, Mast has failed to show that he is likely to succeed on the merits of an appeal. Mast makes no showing that he has started an appeal process or that he will ever receive a new wetland easement map subject to the December 23, 2019 directive. The language of the directive appears to contemplate that correspondence with pre-1976 wetland easement landowners in the future will comply with the new appeal format. Although the December 23, 2019 directive provides a process for pre-1976 wetland easements going forward, no new rights are provided to Mast under the directive unless and until USFWS sends Mast a new map. Nowhere in the December 23, 2019 directive does USWFS state that a new wetland easement map will be provided to every pre-1976 wetland easement landowner. And in Mast's case, USFWS already prepared a map of Mast's property in 2010. *See* Docket 95 at 3. Because Mast has not received a new map from USFWS, nor has he shown that he will receive a new map from USWFS, Mast has failed to show that he has any appellate rights

under the new December 23, 2019 directive. Thus, this factor weighs against staying the proceeding.

Second, Mast has failed to show that denying a stay would likely result in substantial harm. Because Mast has failed to show that he will receive a new wetland easement map, Mast currently is not entitled to any administrative remedies. Unless and until Mast receives a new map, Mast has failed to show that denying a stay in this case results in any harm to his right to appeal. Thus, this factor also weighs against granting a stay.

Third, the government would not be severely prejudiced by a delay in bringing its claims against Mast. This case was previously tried to a jury, and the government is requesting that the case now proceed as a bench trial. *See* Docket 93. As noted in the government's motion for a bench trial, "witnesses, some from out of state, have previously testified and were cross-examined." *Id.* at 2. If the court finds that a court trial is appropriate, the government intends to submit trial transcripts from the previous jury trial, and minimal new supplements would be necessary. Proceeding in such a manner would promote judicial efficiency for all parties. Thus, the government is not prejudiced by a stay, and this factor weighs in favor of staying the proceedings.

Finally, the court finds that the public interest is not served by staying the current proceedings. There is a legitimate public interest in resolving criminal cases at the earliest practicable time as recognized in the Speedy Trial Act. *See* 18 U.S.C. § 3161(a). The Speedy Trial Act mandates that before granting a continuance, the judge must find that "the ends of justice served by

taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Here, the court cannot make such a finding because the public has an interest in the timely resolution of this matter. And although there is a public interest in an individual having the opportunity to engage in administrative remedies, Mast has failed to show that he is entitled to engage in any appellate process under the December 23, 2019 directive. Thus, this factor weighs against staying the proceedings.

Mast has failed to show that the December 23, 2019 directive has conferred any new administrative remedies to him. Mast has not received a new map from the USFWS, and as such has yet to begin the appeal process under the directive. After considering the factors, the court finds that the factors weigh against granting a stay. Thus, Mast's motion for stay (Docket 90) is denied.

### B. Motion for Bench Trial

Second, the government moves the court for a bench trial. Docket 93. The government argues that Mast is not entitled to a jury trial, because the charges in the superseding information result in punishment as a Class B misdemeanor. *See id.* at 2 (citing 18 U.S.C. § 3559(a)(7)). Mast opposes the motion. Docket 96.

"It is well established that the Sixth Amendment . . . reserves th[e] jury trial right for prosecutions of serious offenses, and that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.'" *Lewis v. United States*, 518 U.S. 322, 325 (1996) (quoting *Duncan*

5

*v. Louisiana*, 391 U.S. 145, 159 (1968)). When determining whether an offense requires a jury trial, the court should look to " 'the maximum authorized penalty.' " *Blanton v. City of N. Las Vegas*, 489 U.S. 538, 541 (1989) (quoting *Baldwin v. New York*, 399 U.S. 66, 68 (1970)). "In fixing the maximum penalty for a crime, a legislature includes with the definition of the crime itself a judgment about the seriousness of the offense." *Id.* at 542 (internal quotation omitted). "In using the word 'penalty,' we do not refer solely to the maximum prison term authorized for a particular offense. [But] the seriousness of an offense also is reflected in other penalties that [the legislature] attaches to the offense." *Id.* "Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses[.]" *Duncan*, 391 U.S. at 159.

Here, the maximum punishment Mast faces under 16 U.S.C. §§ 668dd(c) and (f)(2) is a term of imprisonment of not more than 180 days, a fine of not more than $5,000, or both. *See* 16 U.S.C. §§ 668dd(c) and (f)(2). "Penalties such as probation or a fine may engender a significant infringement of personal freedom, but they cannot approximate in severity the loss of liberty that a prison term entails." *Blanton*, 489 U.S. at 542 (internal quotation omitted). Thus, the maximum period of incarceration "is the most powerful indication whether an offense is 'serious.' " *Id.* Because Mast faces a term of imprisonment of 6 months or less, but more than 30 days, the offense in the superseding information is a Class B misdemeanor. *See* 18 U.S.C. § 3559(a)(7). A Class B misdemeanor is termed a "petty offense." *See* 18 U.S.C. § 19; *see*

*also Blanton*, 489 U.S. at 543 (noting that "an offense carrying a maximum prison term of six months or less" is viewed by society as a petty offense). Thus, a presumption exists that the charge is "petty" for purposes of the Sixth Amendment.

Mast argues that he is entitled to a jury trial due to the serious penalties that can be imposed upon him if convicted. *See* Docket 96 at 2-3. He argues that although the maximum criminal penalties are sixth months imprisonment, a $5,000 fine, or both, Mast will also have to pay to restore the wetland, which will cost thousands of dollars. *See id.* at 3. If convicted, Mast argues that he will also lose the $35,000 he invested in drain tile, and will pay more than $10,000 for a restoration plan. *Id.* Finally, Mast argues that if he is found guilty and is forced to remove the drain tile, he will lose significant value to his property of 127 acres. *Id.* Thus, Mast argues that based on the restoration plan costs and loss of property value, together with the maximum imprisonment and fine, illustrate that the charge in the superseding information is a serious offense that warrants a jury trial under the Sixth Amendment. *Id.*

Here, the seriousness of other punishment is not enough in itself to entitle Mast to a jury trial. In this case, the maximum period of incarceration is six months or less. And "[a] defendant is entitled to a jury trial [for a petty offense] only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense

7

in question is a 'serious' one." *Blanton*, 489 U.S. at 543. Mast has failed to demonstrate that any additional penalties are so severe that the offense in the superseding information is a "serious" one. Although Mast may incur additional monetary loss estimated to cost $10,000 in order to comply with a restoration plan, or may incur property value loss, those "penalties" are not so severe that the restitution converts this case into one that the legislature would consider serious enough for Mast to be entitled to a jury trial. The other losses identified by Mast would be circumstantial consequences of a restitution order that are speculative in nature, if he is found guilty.

Finally, Mast argues that the Eighth Circuit Court of Appeals' opinion presumed that Mast would receive another jury trial. Docket 96 at 4. Mast is correct that the Eighth Circuit's opinion remanding the case focused on the *mens rea* element in the previous trial's jury instructions. *See* Docket 83. But the Eighth Circuit remand concerned jury instructions on both the charged offense of 16 U.S.C. §§ 668dd(c) and (f)(1) and the lesser-included offense. Following the Eighth Circuit remand, the government filed a superseding information, proceeding only on the lesser offense of 16 U.S.C. §§ 668dd(c) and (f)(2). Thus, because Mast is not facing charges under both 16 U.S.C. §§ 668dd(f)(1) and (f)(2), holding a bench trial in this matter would not circumvent the Eighth Circuit opinion.

Under 18 U.S.C. § 3401(f), a "district court may order that proceedings in any misdemeanor case be conducted before a district court judge rather than a United States magistrate judge upon the court's own motion or, for good cause

8

shown, upon petition by the attorney for the [g]overnment." Here, the government has petitioned this court to conduct a bench trial. The court finds that good cause exists for a bench trial before this court. This court previously heard the jury trial in this case. Additionally, the charge in the superseding information is uncommon and involves unique evidence. Because this court is already familiar with the case, testimony, and trial exhibits, good cause has been shown upon petition by the government for the district court to hold the bench trial.

## CONCLUSION

After analyzing and weighing the factors, the court finds that the factors weigh against a stay. The court also finds that a bench trial is appropriate in this matter. Thus, it is

ORDERED that Mast's motion to stay (Docket 90) is denied.

IT IS FURTHER ORDERED that the government's motion for bench trial (Docket 93) is granted.

Dated January 22, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE